STOKER, Judge.
Plaintiff, Wyble Deville, appeals a judgment dismissing his suit against the Opelou-sas General Hospital and its employee, George Davy, for damages resulting from personal injury he sustained in a fall at the hospital. For the reasons set out below, we reverse.
FACTS
Deville is an amputee, having lost his right leg as a result of a motorcycle accident in 1947. On January 31, 1979, he was admitted to the Doctors’ Hospital of Opel-ousas to receive treatment for an injury to his left eye incurred in a fall at his home. On February 1 and again on February 5, Deville was sent to Opelousas General from Doctors’ Hospital in order to have x-rays taken of his eye.
On February 1, Deville was taken to Opelousas General in an ambulance. He entered the hospital on a stretcher and in the x-ray room he was transferred directly from the stretcher to the x-ray table by three or four people.
The accident which is the subject of this litigation occurred on February 5, 1979. Deville was driven to Opelousas General in a station wagon and placed in a wheel chair. He was carrying his crutches and not using his artificial leg at this time. He was taken to an x-ray room in the wheel chair by defendant Davy, an x-ray technician. A footstool was situated next to the x-ray table with a single handrail located on one side of it. The handrail extended upward about even with the surface of the x-ray table.
Deville claims that at this point Davy stood by the door of the room and ordered him to climb up on the table unassisted. In attempting to do so, he lost his balance and fell injuring the stump of his right leg. Davy’s version is that while assisting De-ville onto the table, the patient lost his balance and fell. Davy was alone and unable to prevent the fall.
In accordance with the Louisiana Medical Malpractice Act of 1975, Deville convened a medical review panel and obtained an opinion regarding his claims. The pertinent part of that opinion states:
*1133 “In accordance with the procedure of Paragraph G, it was the opinion of the panel that the evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint. It was the opinion of the panel based on the medical evidence submitted that the patient had probably sustained a contusion or trauma to the stump and that there was no evidence submitted which indicated that the patient had sustained any medical expenses other than the visit to Dr. Myer, Dr. Cobb and x-rays of the stump at Doctor’s Hospital of Opelousas. It was further the opinion of the panel that there was no evidence to support that there was any permanent physical impairment as a result of the fall.”
Deville’s suit alleges in essence that Davy was negligent in his handling of Deville and that the Opelousas General is liable for that negligence through the doctrine of respon-deat superior. The jury which heard the case rendered verdicts in favor of both defendants, George Davy and Opelousas General Hospital.
COMMUNITY STANDARD OF CARE
On appeal, Deville claims that the testimony of Dr. Joseph Soileau regarding his familiarity with the practice of various hospitals in handling x-ray patients was improperly admitted to show a community standard of care. Dr. Soileau is a radiologist and served on the medical review panel. He testified that based on his experience he believed one technician could adequately assist a man in Deville’s condition onto the table. Apparently, the review board accepted Davy’s version of the accident, as did the jury.
It is plaintiff’s position on appeal that the testimony of Dr. Soileau established a “community standard of care” by which this accident was evaluated in contravention of the required standard of care discussed in Richard v. Southwest Louisiana Hospital Association, 383 So.2d 83 (La.App. 3rd Cir.1980), writ denied 385 So.2d 274 (La.1980). In that case the court, citing other authorities, stated:
“A determination of whether a hospital has breached the duty of care it owes to a particular patient depends upon the circumstances and the facts of that case.”
We do not find that the testimony of Dr. Soileau established a community standard. Rather, Dr. Soileau considered the particular circumstances of this case and expressed an opinion based on his experience. His testimony should not have been excluded on that basis.
LIABILITY
In finding for defendants, the jury apparently believed that Davy acted properly in attempting to assist Deville onto the table by himself. However, after carefully examining the picture of the x-ray table and the footstool along with the testimony of Davy, we find that the duty of care owed to this particular patient was breached. We find that the verdict of the jury in this case was clearly wrong.
At the time of this accident, Deville’s left eye was still bruised and swollen as a result of the fall at his home. In fact, the x-rays were to be made of his left eye. He was not wearing his prosthesis and could be easily identified as an amputee. Davy testified at trial that Deville appeared to be weak at the time, yet no assistance was requested.
The stool which is normally used to climb onto the x-ray table is elevated about one foot from the floor. It is equipped with a U-shaped rail on one side which rises several feet approximately even with the surface of the x-ray table. Ordinarily, a patient would step onto the stool and then lean on the rail to climb onto the table. Thus, the patient’s own weight would counterbalance any lateral force the patient might exert against the handrail and thus prevent it from falling or turning over.
Deville, having only one leg, could not step on the stool before leaning on its rail even with Davy’s assistance. Thus, whether he was alone or being assisted by Davy *1134 makes no difference. When he leaned on the stool rail, it was virtually certain to turn over and fall. It appears to us that the only way in which Davy could have safely assisted Deville onto the table was to lift him up onto it. Although there is no evidence regarding Davy’s physical capabilities, Deville testified that at the time of the accident he was five feet eight inches tall and weighed 185 pounds. Unless Davy is a man of exceptional strength, we do not believe he could have lifted Deville up onto the table without assistance.
Thus, we hold that Davy and his employer, Opelousas General Hospital, breached the standard of care owed to Deville and are liable for any damages he incurred.
DAMAGES
The record in this case is sufficient for us to render judgment on the merits in accordance with the dictates of Gonzales v. Xerox Corporation, 320 So.2d 163 (La.1975).
At trial, two doctors who saw Deville as a result of his fall on February 5, 1979, testified. Dr. Mayer, a general practitioner, saw him on March 16 after the fall and stated that there was tenderness in the stump and Deville complained of pain. Dr. Mayer saw Deville again on March 19 in order to have some x-rays made. He did not see Deville again until June 12,1981, at which time Deville was complaining of aching in his stump and Dr. Mayer prescribed Percodan. The only evidence of Dr. Mayer’s charges is a receipt issued to Deville and dated March 19, 1979, for $45.00.
Deville was also seen by Dr. Cobb, an orthopedic surgeon, after his fall. Dr. Cobb was of the opinion that Deville had suffered contusions and an inflammatory reaction in his stump as a result of his fall and that such a problem should be resolved in three to four weeks. Defendants stipulated that Dr. Cobb charged Deville $85.00 for services incurred for treatment of this injury.
A receipt from Thrifty Way Pharmacy was also entered into evidence, but there was not sufficient evidence that the prescriptions listed on it were connected with this accident. Thus, the total proven medical expenses are $130.00.
There is also no evidence that Deville missed any work as a result of this accident. He did miss some work due to the injury to his eye incurred in the unrelated fall at his home.
Deville and his wife both testified as to the effect the February 5 fall had on him. He apparently has difficulty wearing his prosthesis now which he testified he did not have before the accident involved in this case. He is able to work wearing his prosthesis, but he states he now uses crutches because, unlike the situation before the fall, he finds it too painful to put his weight on the prosthesis.
We find difficulty in evaluating Mr. De-ville’s general damages. All the testimony, including Mr. Deville’s, establishes that the only significant complaint is Mr. Deville’s assertion that, since the fall in Opelousas General Hospital, wearing his prosthesis causes him pain. The testimony of Drs. Mayer and Cobb is inconclusive as to whether there was any permanent nerve damage in the stump. Also, it was not possible to draw any medical conclusion as to whether there was any relationship between the trauma experienced in the fall and any pain in the stump of which plaintiff complains. The medical testimony establishes that it is not uncommon for amputees to have pain in the stump because of the amputation itself.
There was no evident injury at the time plaintiff fell in defendant’s x-ray room. Plaintiff made no complaint to Davy. They proceeded with the taking of the x-rays and plaintiff made no complaint during approximately fifteen minutes which elapsed during this time. He made no complaint to anyone when he left Opelousas General Hospital. He remained at home for approximately one month, but this appears to have been because of headaches caused by the earlier fall which occurred on January 31, 1979.
Dr. Mayer was of the opinion that in plaintiff’s February 5 fall in defendant’s hospital, plaintiff sustained a contusion of the hip or stump resulting in an inflamma *1135 tory reaction manifested by tenderness and irritation of the sciatic nerve. This could have been an aggravation of a pre-existing condition caused by wearing the prosthesis.
Dr. Cobb testified that the weight of the body in wearing a prosthesis is not on the stump. The weight is borne by the pelvis and the musculature of the pelvis. He testified there was no way to determine whether plaintiff experienced pain in his stump prior to the fall. Dr. Mayer stated that he could have experienced pain before the fall from sitting on the prosthesis in the course of normal use. He discontinued plaintiff’s prescription for pain medication (Percodan) for fear that plaintiff would develop a dependency for the drug.
Mr. Deville states he did not return to Dr. Mayer or Dr. Cobb after his visits to them in 1979. (Tr. 313) He last saw Dr. Cobb on June 15,1979. According to Dr. Mayer, Mr. Deville again requested pain medication on June 12,1981. Plaintiff excused his failure to continue to see the doctors on financial reasons.
In summary, we conclude that plaintiff sustained no significant injury and no exceptional pain at the time of and immediately after his fall. He simply went about his business. Except for his headaches not related to this fall, he would apparently have returned without delay to his job as an elevator operator in the parish courthouse, a job at which he sits. For the most part, Mr. Deville’s residual complaint is that after the fall, use of his prosthesis caused him pain, and as a result his activities are now hampered and restricted. Although no medical testimony supports him, no medical evidence contradicts him. We have some doubt as to the validity of Mr. Deville’s complaint but will accord him the benefit of the doubt.
Mr. Deville continues to work and live a life not greatly different from his handicapped situation prior to the fall. He explains that he cannot now hunt as he has to negotiate on crutches altogether. All other activity is similarly restricted. Although we do not wish to minimize any loss of mobility and freedom of movement sustained by Mr. Deville, we do not regard his damages as justifying an exceptional award.
We feel that a general damages award of $2,500.00 will adequately compensate Deville for his physical and mental pain and suffering. His special damages amount to $130.00.
For the above reasons, the judgment of the trial court is reversed and set aside and judgment is rendered herein in favor of the plaintiff, Wyble Deville, and against defendants, George Davy and Opelousas General Hospital, in solido, in the sum of $2,630.00, together with legal interest from date of judicial demand until paid and for all costs of this litigation, both at the trial court and in this appeal.
REVERSED AND RENDERED.